# Supreme Court of Louisiana

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**BY HUGHES, J.**:

2014-CC-0288      ROY BUFKIN, JR. v. FELIPE'S LOUISIANA, LLC, ET AL. (Parish of Orleans)

Accordingly, the judgment of the district court is reversed, and summary judgment is hereby entered in favor of Shamrock Construction Co., Inc., dismissing this defendant from this action, with prejudice.  We remand this matter to the district court for further proceedings consistent with the foregoing. REVERSED; JUDGMENT RENDERED; REMANDED.

JOHNSON, C.J., dissents.
GUIDRY, J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-CC-0288

ROY BUFKIN, JR.

VERSUS

FELIPE'S LOUISIANA, LLC, ET AL.

**ON SUPERVISORY WRITS TO THE CIVIL DISTRICT COURT
FOR THE PARISH OF ORLEANS**

**HUGHES, J.**

This writ presents the issue of whether a building contractor breached any legal duty owed to a pedestrian crossing a street next to the contractor's dumpster, who was struck by an oncoming bicyclist. After a thorough review of the record presented, we conclude that the dumpster was obvious and apparent, and not unreasonably dangerous; thus, there was no duty to warn of the clearly visible obstruction, and the district court erred in failing to grant summary judgment dismissing the contractor. Therefore, we reverse the district court judgment, render summary judgment in favor of the defendant/contractor, and remand to the district court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This personal injury action arose on December 2, 2011, at approximately 4:30 in the afternoon, when Royce Bufkin, Jr. was walking through the French Quarter from a jewelry store on Royal Street to a wine shop on Chartres Street, via Conti Street. Outside a building under renovation at 622 Conti Street, Mr. Bufkin encountered a construction barrier blocking the sidewalk, which directed pedestrians to use the sidewalk on the other side of the street. At this location, there was also a large construction dumpster placed on several adjacent on-street

parking spaces by Shamrock Construction Co., Inc. ("Shamrock"), in connection with renovations it had contracted to make at 622 Conti Street. While attempting to cross the street by the dumpster, Mr. Bufkin was hit by a bicyclist and injured.

At the time of the accident, Mr. Bufkin was walking toward the Mississippi River down Conti Street, which is a one-way street in the same direction. The bicyclist, who was working in the course and scope of his employment as a deliveryman for Felipe's Louisiana, LLC d/b/a Felipe's Taqueria Restaurant ("Felipe's"), was traveling in the wrong direction (away from the river) on Conti Street. Mr. Bufkin had stopped before crossing Conti, next to the dumpster, to allow two cars to pass (approaching from the direction of Lake Ponchartrain), but he failed to look to his right (in the direction of the river) before crossing the street, and he did not see the bicyclist approaching.

Mr. Bufkin filed the instant suit on March 6, 2012, naming as defendants: Felipe's; Felipe's insurer, Maryland Casualty Company; Shamrock; Lewis C. Ramel, Jr., the alleged owner of 622 Conti Street; and "Any Unidentified Owners of 622 Conti Street."

On November 20, 2013 Shamrock filed a motion for summary judgment, contending that it was not negligent and that the plaintiff would be unable to establish that it owed a duty, as alleged. Following a December 13, 2013 hearing on Shamrock's motion for summary judgment, the district court denied the motion for summary judgment, reasoning that whether Shamrock posted a warning on its sidewalk-closure sign sufficient to notify the plaintiff of the "existence of problems" was a question of fact that precluded summary judgment.

The appellate court denied Shamrock's subsequent writ application. See **Bufkin v. Felipe's Louisiana, LLC**, 14-0051 (La. App. 4 Cir. 1/14/14) (unpublished). Thereafter, this court granted Shamrock's writ application. See **Bufkin v. Felipe's Louisiana, LLC**, 14-0288 (La. 6/20/14), 141 So.3d 276. We

2

conclude that the condition presented by the presence of Shamrock's clearly marked and visible construction dumpster, adjacent to a one-way French Quarter street, was obvious, apparent, and did not create an unreasonable risk of harm; thus, no duty was owed.

## LAW AND ANALYSIS

This court applies a de novo standard of review in considering lower court rulings on summary judgment motions. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B). See **Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC**, 12-2504 (La. 10/15/13), 124 So.3d 1065, 1071.

On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. See LSA-C.C.P. art. 966(C)(2); **Schultz v. Guoth**, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

In its motion for summary judgment, Shamrock asserted that the plaintiff would be unable to establish the duty element of his negligence action. Shamrock argued that since the duty element is an essential element of the plaintiff's negligence action and there was no genuine issue of material fact, it was entitled to

3

a judgment of dismissal as a matter of law. Shamrock asserted that it had no duty to warn the plaintiff to look both ways before crossing the street.

The plaintiff maintained that Shamrock was liable for his injuries because Shamrock had negligently created an unreasonable risk of harm to pedestrians by setting up a "blind spot" that prevented pedestrians from seeing oncoming traffic when crossing the street near Shamrock's dumpster. The plaintiff argued that Shamrock's sidewalk closure funneled pedestrians into crossing the street by the dumpster, and Shamrock's placement of the large dumpster immediately next to the street, without a buffer zone, created a line-of-sight obstruction for pedestrians of traffic on the street. The plaintiff further asserted that Shamrock's sign, which advised that the sidewalk was closed and that the sidewalk on the other side of the street should be used, should also have advised pedestrians that the dumpster created a blind spot and that the street should be crossed at the corner. Further, the plaintiff contended that Shamrock should have placed "fences or buffers around [the dumpster] as is customarily placed around such dumpsters," contending that such a "buffer" would have "eliminated that blind spot had it been properly placed at that area of the construction site."

The issue thus framed is whether the sidewalk condition, created by Shamrock's allegedly insufficient posted warnings and the placement of the large curbside dumpster, produced a vision obstruction for pedestrians crossing the street at that location that was unreasonably dangerous, and, if so, whether Shamrock owed a duty to place additional warnings on its signage and/or to construct a buffer zone that would mitigate against any vision obstruction created.

As we stated in **Christy v. McCalla**, 11-0366 (La. 12/6/11), 79 So.3d 293, Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her

4

conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. **Christy v. McCalla**, 79 So.3d at 299 (citing **Pinsonneault v. Merchants & Farmers Bank & Trust Company**, 01-2217 (La. 4/3/02), 816 So.2d 270, 275-76).

The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law. **Milbert v. Answering Bureau, Inc.**, 13-0022 (La. 6/28/13), 120 So.3d 678, 687-88.

In the instant case, by closing the sidewalk adjoining 622 Conti Street for its construction/renovation activities, which also extended into the abutting parking spaces where it placed its dumpster, Shamrock, acting on behalf of the building owner, effectively assumed custody of the sidewalk and abutting parking spaces. Thus, LSA-C.C. art. 2317 and 2317.1 are relevant to this proceeding, and provide:

> **Art. 2317. Acts of others and of things in custody**
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

> **Art. 2317.1. Damage caused by ruin, vice, or defect in things**
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

The burden for tort liability arising from a defect in a public sidewalk is generally with the municipality, not the adjoining landowner, unless the abutting property owner negligently caused a defect in the sidewalk. See **Randall v. Feducia**, 507 So.2d 1237, 1239 (La. 1987); **Arata v. Orleans Capitol Stores**, 219

5

La. 1045, 1058-60, 55 So.2d 239, 244 (La. 1951); **Stern v. Davies**, 128 La. 182, 54 So. 712 (La. 1911). Notwithstanding, a pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. **Hutchinson v. Knights of Columbus, Council No. 5747**, 03-1533 (La. 2/20/04), 866 So.2d 228, 234; **Williams v. Leonard Chabert Medical Center**, 98-1029 (La. App. 1 Cir. 9/26/99), 744 So.2d 206, 211, writ denied, 00-0011 (La. 2/18/00), 754 So.2d 974.

When evaluating the duty owed relative to a sidewalk condition, the facts and surrounding circumstances of each case control and the test applied requires the consideration of whether the sidewalk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. Courts have adopted a risk-utility balancing test to determine whether such a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. See **Chambers v. Village of Moreauville**, 11-0898 (La. 1/24/12), 85 So.3d 593, 597-98.

This court has synthesized the risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. **Broussard v. State ex rel. Office of State Buildings**, 12-1238 (La. 4/5/13), 113 So.3d 175, 184; **Dauzat v. Curnest Guillot Logging, Inc.**, 08-0528 (La. 12/2/08), 995 So.2d 1184, 1186-87 (per curiam); **Hutchinson v. Knights of Columbus, Council No. 5747**, 03-1533 (La. 2/20/04), 866 So.2d 228, 235; **Pitre v. Louisiana Tech University**, 95-1466 (La. 5/10/96), 673 So.2d 585, 591-93.

Regarding the first prong of this test, the utility of the defendant's activities in this case is not disputed. Conducting repairs and renovations to aging French Quarter buildings is not only desirable but necessary.

The second prong of this risk-utility inquiry focuses on whether the allegedly dangerous or defective condition was obvious and apparent. Under Louisiana law, a defendant generally does not have a duty to protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, this court has consistently stated the hazard should be one that is open and obvious to everyone who may potentially encounter it. **Broussard v. State ex rel. Office of State Buildings**, 113 So.3d at 184; **Hutchinson v. Knights of Columbus, Council No. 5747**, 866 So.2d at 234.

Along with the pleadings, Shamrock submitted the following in support of its motion for summary judgment in this case: (1) the affidavit of Dale D. Johnson, Shamrock's superintendent for the construction/renovation project of the 622 Conti Street building; (2) the deposition of the plaintiff; and (3) photographs identified in the plaintiff's deposition as those he had taken of the accident site about a week after the accident. While the plaintiff also pointed to the Dale Johnson affidavit, his own deposition, and the photographs he had taken, he did not submit anything in addition to these three items of evidence.

Mr. Johnson's affidavit revealed the following facts. The 622 Conti Street building is located on Conti between Royal Street (on the lake side) and Chartres Street (on the river side) and is next to the office of the New Orleans Police Department's 8th District, which fronts Royal Street, and across from the Louisiana Supreme Court building, which also fronts Royal Street. At the time of the construction project there were three parking spaces, designated by signs as "No Parking Police Zone," which were approximately nine feet wide and extended length-wise for a total of approximately sixty feet, along Conti in front of 622

7

Conti Street and adjacent buildings. Shamrock rented these three parking spaces from the City of New Orleans, with the permission of the 8th District, for the duration of the project. The renovation project lasted from approximately June of 2011 through February of 2013.

Mr. Johnson further averred in his affidavit that from approximately July through December of 2011, Shamrock placed a red, 30-cubic-yard dumpster, measuring approximately 22 feet in length, 8 feet in width, and 5 feet, 2 inches in height, on the three leased parking spots. The lake-side end of the dumpster was approximately 92 feet from the corner of Royal Street and in line with the Royal Street side of the building at 622 Conti Street. During this time (July through December of 2011), the sidewalk was also closed by Shamrock. On the Royal Street side, beginning even with the end of the dumpster, there was an 8-foot-high board on which was placed a 4-by-3-foot sign that read: "SIDEWALK CLOSED" (in 5-inch lettering) and "PLEASE USE OTHER SIDEWALK" (in 3.5-inch lettering). Beneath the lettering, there was a large arrow that pointed to the opposite side of Conti Street. The background of the sign was white, and the lettering and arrow were green. Next to the sign board was a barricade barrel with reflective stripes, which blocked the remaining portion of the sidewalk. No pedestrian crossing was delineated at the construction location.

Mr. Johnson also stated that the size of the dumpster placed at 622 Conti Street was comparable in size to a large vehicle, such as a 2011 Ford Econoline E-250 van (which is approximately 19.7 feet in length and 7.08 feet in height) or a 2006 Ford F-250 4x4 (which is approximately 20 feet, 4 inches in length, and 6 feet, 8 inches in height).

Mr. Bufkin testified in his deposition to the following facts. He had at that time lived in the French Quarter for thirty years, the last fifteen of which were at his home on Bourbon Street. Mr. Bufkin denied having any problem seeing

8

distances, though he admitted to needing glasses to read small print. He also denied having consumed any type of alcoholic beverage, medication, or drug on the day of the accident that would have impaired his perception.

Immediately before the accident, Mr. Bufkin was walking from his friend's jewelry shop located at 322 Royal Street, and he turned onto Conti Street on the way to a wine shop on Chartres Street to buy a lottery ticket (a trip he made approximately twice a week). After he passed the police station at Royal and Conti, the sidewalk was closed by a sign pointing to and advising pedestrians to use the sidewalk across the street. Mr. Bufkin stated that he walked next to the dumpster adjacent to the closed sidewalk to cross the street. He explained that, because police cars were parked all along Conti Street "almost bumper to bumper," pedestrian traffic would cross the street by the dumpster. Mr. Bufkin said he followed the pedestrian traffic crossing by the dumpster, since he thought crossing by the dumpster was a shortcut.

Mr. Bufkin stated that, just before crossing the street, he waited for two cars to pass by from his left, in the same direction that he was walking (toward the river). After the two cars passed, Mr. Bufkin stepped out from the dumpster, just as he was turning his head from looking to his left toward the right, and was struck by a bicyclist, who was traveling the wrong way down the one-way street. Mr. Bufkin does not dispute that he failed to look to his right before attempting to cross the street, asserting only that, at 6 feet, 5 inches in height, he could not "see past" the dumpster.

Mr. Bufkin admitted that he had known about the presence of the dumpster at 622 Conti Street for more than four months by the time of the accident. He further acknowledged that he was aware that some people in the Quarter would at times walk, jog, or ride bicycles the wrong way down one-way streets.

The photographs taken by Mr. Bufkin showed the barricade of the sidewalk

9

on the lake side of 622 Conti Street, the warning signs posted by Shamrock, and the location and size of the dumpster. Of note is the photograph marked "Exhibit 10," which showed both the dumpster and a four-door pick-up truck parked next to the dumpster. Exhibit 10 reveals the dumpster to be approximately the same size as the pick-up truck.

In accordance with the law and jurisprudence cited hereinabove, Shamrock, having assumed custody of the sidewalk and abutting parking spaces outside of 622 Conti Street during the pertinent time period, would have been liable for any unreasonably dangerous condition it created. However, the evidence presented on motion for summary judgment established that any vision obstruction, caused by the dumpster, to a pedestrian crossing Conti Street at that mid-block location was obvious and apparent, and reasonably safe for persons exercising ordinary care and prudence. Moreover, because the size of the dumpster was comparable to a pick-up truck, this particular situation was of the type any pedestrian might encounter on a regular basis. Thus, we conclude that Shamrock had no duty to warn of the obstruction presented to pedestrians by its pick-up-truck-sized dumpster, a large inanimate object visible to all.

Once Shamrock demonstrated that the plaintiff would be unable to bear his burden to prove an essential element of his negligence action, that a duty was owed by Shamrock to him, then the burden shifted to the plaintiff to demonstrate that he would be able to meet the burden at trial. See **Schultz v. Guoth**, 57 So.3d at 1006. Yet the plaintiff failed to produce any affidavit, deposition, or other evidence admissible on motion for summary judgment to show that Shamrock did have a duty to warn pedestrians of the obstruction or take extra measures to aid pedestrians to see around the obstruction.[1]

---

[1] Subject to a trial court's **Daubert-Foret** review, expert opinion evidence, in the form prescribed by LSA-C.C.P. arts. 966(B) and 967, may be considered on motion for summary judgment. See **Independent Fire Insurance Company v. Sunbeam Corporation**, 99-2181

As stated by LSA-C.C.P. art. 967(B), when a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise, must set forth specific facts showing that there is a genuine issue for trial. See **Luther v. IOM Company LLC**, 13-0353 (La. 10/15/13), 130 So.3d 817, 822; **Cheramie Services, Inc. v. Shell Deepwater Production, Inc.**, 09-1633 (La. 4/23/10), 35 So.3d 1053. Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. **Dauzat v. Curnest Guillot Logging Inc.**, 995 So.2d at 1187 (citing **Babin v. Winn-Dixie Louisiana, Inc.**, 00-0078 (La. 6/30/00), 764 So.2d 37, 40). See also **Alexander v. Toyota Motor Sales, U.S.A.**, 13-0756 (La. 9/27/13), 123 So.3d 712, 714 ("All elements must be proven to succeed on this claim; therefore, a lack of factual support for just one element renders summary judgment in favor of [the defendant] appropriate.").[2]

Because the plaintiff in this case failed to show, on motion for summary judgment, that he would be able to bear his burden at trial to prove a duty was owed by Shamrock, summary judgment in favor of Shamrock should have been granted. See **Cheramie Services, Inc. v. Shell Deepwater Production, Inc.**, 35 So.3d at 1059; **Dejoie v. Medley**, 08-2223 (La. 5/5/09), 9 So.3d 826, 832 ("If he

---

(La. 2/29/00), 755 So.2d 226, 231-36. See also **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and **State v. Foret**, 628 So.2d 1116 (La. 1993).

[2] See also **MB Industries, LLC v. CNA Insurance Company**, 11-0303 (La. 10/25/11), 74 So.3d 1173, 1184 ("Once the defendant's motion is filed, the plaintiff must present sufficient factual support to prove every essential element of his claim . . . . He cannot simply tell the court that the evidence will be forthcoming at some unknown later date." "If a motion for summary judgment is filed early in the proceedings, before a party has had reasonable time to retain an expert, the trial court may continue the hearing on the motion in order to give the party an adequate opportunity to find an expert and obtain his testimony.").

does not so respond, summary judgment, if appropriate, shall be rendered against him.").[3]

## CONCLUSION

In this case, Shamrock met its burden of producing evidence, on motion for summary judgment, to point out the lack of factual support for an essential element in the plaintiff's case, demonstrating that because the condition complained of by the plaintiff was obvious and apparent and was reasonably safe for pedestrians exercising ordinary care and prudence, it had no duty to extend additional warnings to pedestrians or to create a buffer zone around its dumpster. The burden then shifted to the plaintiff to come forward with evidence (by affidavit, deposition, discovery response, or other form sanctioned by LSA-C.C.P. arts. 966 and 967) to demonstrate that he would be able to meet his burden at trial to show a duty on the party of Shamrock. The plaintiff failed to meet this burden; therefore, the district court erred in failing to grant summary judgment in Shamrock's favor.

## DECREE

Accordingly, the judgment of the district court is reversed, and summary judgment is hereby entered in favor of Shamrock Construction Co., Inc., dismissing this defendant from this action, with prejudice. We remand this matter to the district court for further proceedings consistent with the foregoing.

**REVERSED; JUDGMENT RENDERED; REMANDED.**

---

[3] We note that our opinion in **Broussard v. State ex rel. Office of State Buildings**, *supra*, should not be construed as precluding summary judgment when no legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous.

**SUPREME COURT OF LOUISIANA**

**No. 2014-CC-0288**

**ROY BUFKIN, SR.**

**VERSUS**

**FELIPE'S LOUISIANA, LLC, ET AL.**

**ON SUPERVISORY WRITS TO THE CIVIL DISTRICT COURT
FOR THE PARISH OF ORLEANS**

**JOHNSON, Chief Justice, dissents.**

SUPREME COURT OF LOUISIANA

No. 2014-CC-0288

ROY BUFKIN, SR.

VERSUS

FELIPE'S LOUISIANA, LLC, ET AL.

ON SUPERVISORY WRITS TO THE CIVIL DISTRICT COURT
FOR THE PARISH OF ORLEANS

**GUIDRY, Justice, concurs and assigns reasons.**

I concur in the majority's holding that summary judgment in favor of the defendant contractor, Shamrock Construction Co., was mandated under the facts of this case and the applicable law. *Broussard v. State ex rel. Office of State Buildings*, 12-1238 (La. 4/5/13), 113 So.3d 175, holds that the determination of an unreasonable risk of harm is a question of fact; however, as the instant case demonstrates, our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of condition or thing is unreasonably dangerous. *See Pitre v. Louisiana Tech. Univ.*, 95-1466 (La. 5/10/96), 678 So.2d 585. Accordingly, I agree with the majority's conclusion that "the evidence presented in the motion for summary judgment established that any vision obstruction, caused by the dumpster, to a pedestrian crossing Conti Street at that mid-block location was an open and obvious hazard, and reasonably safe for persons exercising ordinary care and prudence." *Supra*, p. 10.

In *Pryor v. Iberia Parish School Bd.*, 10-1683 (La. 3/15/11), 60 So.3d 594, 596-97, this court explained as follows:

The general rule is that the owner or custodian of property has a duty to keep the property in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. *Smith v. The Runnels Schools, Inc.*, 04-1329 (La. App. 1 Cir. 3/24/05), 907 So.2d 109, 112. Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Eisenhardt v. Snook*, 08-1287 (La. 3/17/09), 8 So.3d 541; *Dauzat v. Curnest Guillot Logging, Inc.*, 08-0528 (La.12/2/08), 995 So.2d 1184. It is the court's obligation to decide which risks are unreasonable based upon the facts and circumstances of each case. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La. 1984). The ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. *Reed v. Wal-Mart, Inc.*, 97-1174 (La. 3/4/98), 708 So.2d 362.

In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. *Reed*, 97-1174 at p. 5, 708 So.2d at 365; *Boyle v. Board of Supervisors*, 96-1158 (La. 1/14/97), 685 So.2d 1080, 1083; *Entrevia v. Hood*, 427 So.2d 1146, 1149 (La. 1983); *Langlois v. Allied Chemical Corp.*, 258 La. 1067, 249 So.2d 133 (1971). In determining whether a condition is unreasonably dangerous, courts have adopted a risk-utility balancing test. This test encompasses four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs' activities in terms of its social utility, or whether it is dangerous by nature. *Pitre v. Louisiana Tech. Univ.*, 95-1466 (La. 5/10/96), 673 So.2d 585.

In *Pitre*, this court emphasized that "the obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff." 673 So.2d at 591. This court recently reiterated that principle, stating that "to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition." *Broussard*, p. 17, 113 So.3d at 188.

In *Pryor*, the plaintiff, a sixty-nine-year-old woman recovering from hip surgery, attempted to descend over a bleacher step with an eighteen-inch gap between the first and second step. The plaintiff testified that she noticed the large gap between the step upon ascending the steps, and that in order to ascend the step, she lay on her side so she could swing one leg up at a time, and then stood up. On the way down, however, instead of lying on her side and swinging her legs over the gap as she had done earlier, the plaintiff attempted to simply step down, and in the process, fell and injured herself. The record reflected that on the opposite side of the stadium, the bleachers were handicap accessible, but the plaintiff had chosen to sit on the side which was not handicap accessible. This court found the bleachers were not unreasonably dangerous, because "plaintiff was aware of this open and obvious risk," and "could have easily avoided any risk by using additional care (as she did when she first ascended the bleachers), or by choosing to sit on the west side of the stadium where suitable accommodations for persons with physical impairments were provided." *Pryor*, 60 So.3d at 598.

In the instant case, there is no genuine issue as to whether the dumpster presented an obvious and apparent hazard to anyone who encountered it. The dumpster was twenty-two feet long, eight feet wide, and five feet, two inches in height, occupying three parking spots along Conti Street in the middle of the block. Although the defendant had posted signs advising pedestrians that the sidewalk was closed and to use the other sidewalk, the plaintiff sought to cross the street mid-block by the dumpster rather than to return to the corner and to cross the street at the cross-walk at the intersection of Conti and Royal. He then failed to look both ways before stepping out into the street from behind the dumpster. As this court reasoned in *Pryor*, the plaintiff here also could have easily avoided the risk presented by the open and obvious presence of the dumpster. Accordingly, I agree

3

with the majority that there are no genuine issues of material fact and that the defendant is entitled to summary judgment in its favor as a matter of law.