Judgment rendered June 28, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,064-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THERESA LAMBERT, ET VIR                    Respondents
LEE LAMBERT

versus

ZURICH AMERICAN                            Applicants
INSURANCE COMPANY,
LEGENDS GAMING, LLC, AND
LOUISIANA RIVERBOAT
GAMING PARTNERSHIP D/B/A
DIAMOND JACKS HOTEL AND
CASINO

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 161,503

Honorable Bruce M. Bolin (*Pro Tempore*), Judge

* * * * *

LUNN, IRION LAW FIRM, LLC                  Counsel for Applicants
By:  Alexander J. Mijalis

GORDON MCKERNAN INJURY                     Counsel for Respondents
ATTORNEYS
By:  Makiva N. Johnson

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

A patron of a casino sued the casino and its insurer after she tripped and fell over a wheel stop located in the casino's parking garage. The defendants filed a motion for summary judgment, arguing that the wheel stop did not present an unreasonable risk of harm and that plaintiff had successfully stepped over the exact wheel stop twice before asserting it caused her to fall on her third attempt. The trial court denied defendants' motion for summary judgment, and they sought supervisory review. For the following reasons, we reverse the trial court's ruling and dismiss all claims against the defendants.

## FACTS AND PROCEDURAL HISTORY

On February 13, 2019, Theresa Lambert ("Lambert") traveled with her daughter, Gaylyn Bunch ("Bunch"), to Diamond Jacks Hotel and Casino ("Diamond Jack's") in Bossier City, Louisiana to enjoy some gambling. Bunch drove, with Lambert in the passenger seat, and they proceeded to the third level of the attached parking garage at Diamond Jack's. They parked in a handicap parking space near the entrance on that level.

The record reveals that Bunch's car was partially and incorrectly parked in an area designated as a loading zone. The vehicle overlapped the parking spot and designated loading zone. The loading zone was marked with blue and white striped lines and included a wheel stop that ran parallel to the car's passenger side door. The wheel stop was painted yellow and located in the blue stripe lined area of the loading zone.

After parking the vehicle, both women exited and walked into the casino without incident. Lambert was able to exit the vehicle and into the casino without tripping over the wheel stop at issue. Bunch testified that

Lambert would have stepped right over the wheel stop upon exiting the vehicle and walking into the casino. Bunch and Lambert entered the casino around noon.

Around 2:00 p.m., Lambert and Bunch exited the casino and returned to the vehicle by the same doors they had used earlier to enter it. They walked the same route to the trunk of their vehicle to store packages received while at Diamond Jack's. Bunch then walked to the driver's side, while Lambert walked to the passenger's side of the vehicle. For a second time, Lambert safely traversed the wheel stop at issue without incident. This was confirmed by Bunch, who testified that Lambert would have walked between the wheel stop and the vehicle when returning to the passenger's side door. When Lambert entered the vehicle, she testified she noticed trash around her seat. She gathered it up and wanted to throw it away in a nearby trash can. Lambert turned from the vehicle, intending to move toward the trash can, and claims that she tripped and fell over the wheel stop on her third encounter with it.

Lambert and her husband filed suit against Zurich American Insurance Company, Legends Gaming, LLC, and Louisiana Riverboat Gaming Partnership d/b/a Diamond Jacks Hotel and Casino d/b/a Diamond Jacks Casino (hereinafter, "defendants"), arguing she was injured by her fall and that the casino failed to maintain the parking lot in a safe condition for patrons. Specifically, plaintiffs alleged that the wheel stop was placed in a manner that was hazardous and presented an unreasonable risk of harm.

On August 12, 2022, defendants filed a motion for summary judgment, arguing that there was no genuine issue of material fact as to Lambert's inability to meet her burden of proof under La. C.C. art. 2317.1,

2

as the complained-of condition did not create an unreasonable risk of harm and was open and obvious to all reasonable persons exercising ordinary care. Defendants argued that Lambert encountered the wheel stop on two prior occasions on the same day that the fall occurred, including one encounter just seconds before she fell. On both previous encounters with the wheel stop, Lambert was safely able to walk over it without falling. In support of their motion for summary judgment, the defendants attached the following exhibits: (1) a copy of the plaintiffs' petition for damages, (2) Lambert's deposition, (3) Bunch's deposition, (4) the affidavit of Marvin Johnson, Diamond Jack's maintenance manager, and (5) three photographs of the scene, including the wheel stop.[1]

Regarding the absence of any prior incidents or falls involving the wheel stop, Marvin Johnson ("Johnson"), who has worked at Diamond Jack's since 1999, testified that the particular wheel stop was set in 1999 and has not moved from that position since that time. As maintenance manager of Diamond Jack's, he is aware of complaints made about defects or other issues located on the Diamond Jack's property, but he is unaware of any trip-and-falls over the wheel stop on the third level of the parking garage. To his knowledge, Lambert is the first person to fall over this particular wheel stop.

Plaintiffs filed a minimal opposition to the defendants' summary judgment motion, which stated only the following as their reason for opposing summary judgment in favor of the defendants:

---

[1] The photographs were exhibits to Lambert's deposition, making them appropriate summary judgment evidence. La. C.C.P. art. 966(A)(4); 2015 Comment (c) to La. C.C.P. art. 966.

…Plaintiff avers that there exists a genuine issue of material fact as to Defendants' allegations that Plaintiff is unable to meet their burden of proof under Louisiana Civil Code article 2317.1, as the complained-of condition was a reasonable risk of harm and was open-and-obvious to all reasonable persons exercising ordinary care….

Attached to the opposition to the defendants' summary judgment motion were two exhibits: (1) Lambert's deposition and (2) a copy of the defendants' responses to interrogatories.

Plaintiffs argued at the hearing on the defendants' motion that discovery was still ongoing and that plaintiffs were not provided Johnson's name by the defendants, despite requesting it in discovery, until the defendants' motion for summary judgment was filed. Plaintiffs argued that they needed to depose Mr. Johnson prior to the case moving forward. At the hearing, the trial court noted that the plaintiffs were improperly parked in the loading zone. However, the court stated that it would deny the motion due to the position of the wheel stop. This writ application followed.

**DISCUSSION**

In their sole assignment of error, defendants argue that the trial court erred in denying their motion for summary judgment because there are no genuine issues of material fact present that would preclude such judgment.

Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So. 2d 129. A trial court must grant a motion for summary judgment if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that the mover is entitled to

4

judgment as a matter of law. La. C.C.P. art. 966(A)(3) and (4). Summary judgment procedure is now favored under our law and will be construed to secure the just, speedy, and inexpensive determination of every action except those disallowed by La. C.C.P. art. 969. La. C.C.P. art. 966(A)(2); *Farrell v. Circle K Stores, Inc.*, 22-00849 (La. 3/17/23), --- So. 3d ---, 2023 WL 2550503.

The burden of proof rests with the mover; nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967(A), an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967(A), must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

In this case, defendants argue that they provided evidence that the wheel stop did not present an unreasonable risk of harm and that they had no knowledge of any alleged dangerous condition. They further argue that

5

plaintiffs did not successfully carry their burden of proof that a genuine issue of fact existed in this matter.

The vehicle in which Lambert was riding was not properly parked within the designated handicapped parking space. In Lambert's deposition, when questioned about how the vehicle was positioned and why it was parked in such a manner as to encroach in the loading zone, which placed the passenger side door closer to the yellow curb stop, she testified:

Q: Do you see where Gaylyn parked the car has tires into the blue painted area; correct?
A. Yes, sir.
Q. Do you know why she did that?
A. Yes, sir.
Q. Why?
A. Because she didn't want her car dinged. She does that every time she parks. When there's an end down there that's a space, she parks -- tries to get over so her car won't get dinged.
Q. Okay. She -- she did not park fully in the handicapped spot; correct?
A. Yes, sir.

Plaintiffs assert that Lambert's injuries were caused by Diamond Jack's negligent failure to maintain the parking lot in a safe condition and specifically stated that the wheel stop created an unreasonable risk of harm to Diamond Jack's customers. The Louisiana Supreme Court has recently discussed the duty/risk analysis and unreasonably dangerous conditions, particularly the "open and obvious" standard. *Farrell*, *supra*. We find *Farrell*, *supra*, to be controlling in this matter, and apply the court's duty/risk analysis to the present case to determine whether liability exists. Whether a claim arises in negligence under La. C.C. art. 2315 or in premises

6

liability under La. C.C. art. 2317.1, the traditional duty/risk analysis is the same. *Farrell*, *supra*.

Under the duty/risk analysis, the plaintiffs must prove five separate elements: 1) the defendant had a duty to conform his conduct to a specific standard (the duty element); 2) the defendant's conduct failed to conform to the appropriate standard (the breach element); 3) the defendant's substandard conduct was cause-in-fact of the plaintiff's injuries (the cause-in-fact element); 4) the defendants substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and 5) proof of actual damages (the damages element). *Farrell*, *supra*. If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Id.* At trial, plaintiffs would bear the burden of proving the elements of their claims against defendants. Thus, for the defendants to prevail on summary judgment, they were required to show an absence of factual support for any of the elements of plaintiffs' cause of action.

As to the first element, La. C.C. arts. 2315, 2316, 2317, and 2317.1 are the source of the duty owed, as they provide the general rule that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. *Farrell*, *supra*. The defendants owed the plaintiffs a duty in the present matter and the first element is satisfied.

Whether there was a breach of the duty owed is a question of fact or a mixed question of law and fact. *Farrell*, *supra*. It is clear from *Farrell*, *supra*, that summary judgment may be granted, based on the absence of

7

liability, when reasonable minds could only agree that the condition was not unreasonably dangerous and, therefore, the defendants did not breach the duty owed. Louisiana courts apply the risk/utility balancing test to make this determination. *Id*.

There are four pertinent factors to be considered when using the risk/utility balancing test: 1) the utility of the complained-of condition; 2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiffs' activities in terms of social utility or whether the activities were dangerous by nature. *Id.* If the application of the risk/utility balancing test results in a determination that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty breached. *Id.*

**Utility of the Complained of Condition**

If the condition at issue was "meant to be there," it will often have social utility, and in the balancing test, weigh against finding that the premises was unsafe. *Farrell*, *supra*. Here, the wheel stop at issue was intentionally placed in a loading zone near the entrance to the casino and had been present in that location since 1999. This element weighs against finding that the premises was unsafe.

**Likelihood and Magnitude of Harm, including the Obviousness and Apparentness of the Condition**

The Louisiana Supreme Court stated in *Farrell*, *supra*, that:

For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and

8

the factor will weigh in favor of finding the condition not unreasonably dangerous.

The photographs attached to defendants' motion for summary judgment and testimony from both plaintiffs are clear that the wheel stop was visibly distinct and readily apparent to all who encountered it. The wheel stop itself was painted yellow and was set within a loading zone that was painted with white and blue stripes. Lambert herself saw and successfully navigated the wheel stop two times prior to her fall, one of which was just moments prior to her fall.

The Louisiana Supreme Court has noted that the size and location of the allegedly unreasonably dangerous condition is relevant to this analysis. In *Farrell*, *supra*, the size and location of a pool of water (the corner of a parking lot) was determined to be not unreasonably dangerous, but the court acknowledged that if the pool had been located at the entrance to the store, then the determination of whether it was unreasonably dangerous could have changed. Here, the wheel stop was located in a loading zone. While the photos of the wheel stop show that it was close to the passenger side door of the vehicle, the photos also show that the only reason it was located so close to the door is because Bunch improperly parked in the loading zone. If Bunch had properly parked in her handicapped parking spot, Lambert's door would not have been so close to the wheel stop.

Considering this, with regard to the magnitude of the harm, a reasonable person who encounters a wheel stop painted yellow, set within a loading zone painted with white and blue stripes, would not look at it and conclude that it presents a likelihood of great harm. Further, it is clear that the wheel stop was apparent to all who may encounter it. A pedestrian has a

9

duty to see that which should be seen and is bound to observe his course to see if the pathway is clear. *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851. An accident alone does not support the imposition of liability, particularly considering the normal hazards pedestrians face while traversing sidewalks and parking lots in this state. *Williams v. Leonard Chabert Med. Ctr.*, 98-1029 (La. App. 1 Cir. 9/26/99), 744 So. 2d 206, *writ denied*, 00-0011 (La. 2/18/00), 754 So. 2d 974. Therefore, we find the likelihood and magnitude of the harm to be minimal.

**Cost of Preventing the Harm**

There is no evidence regarding the cost of preventing the harm in the record, and thus, this element of the test shall not be considered. *Farrell*, *supra*.

**Nature of Plaintiff's Activities in Terms of Social Utility or Whether the Activities were Dangerous by Nature**

Finally, the fourth factor of the risk/utility balancing test considers the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature. Here, Lambert was moving toward a trashcan when she fell over the wheel stop. While the social utility of this activity may be important and is not dangerous in nature, it does not weigh heavily as a consideration in determining an unreasonably dangerous condition. *Farrell*, *supra*.

Considering the above, after applying the risk/utility balancing test, we find that the allegedly hazardous condition was not an unreasonably dangerous condition. The defendants met their initial burden of pointing out the absence of factual support for the breach element of plaintiffs' claims. Thereafter, the burden shifted to the plaintiffs to produce factual support

10

sufficient to establish the existence of a genuine issue of material fact or that defendants are not entitled to judgment as a matter of law. An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other proper summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. *Coleman v. Lowrey Carnival Co.*, 53,467 (La. App. 2 Cir. 4/22/20), 295 So. 3d 427, *writ denied*, 20-00594 (La. 9/23/20), 301 So. 3d 1179.

Plaintiffs' response to defendants' motion for summary judgment simply argues that the wheel stop is in an unexpected place and that they were not given the opportunity to depose Mr. Johnson to confirm that there had never been an accident on that wheel stop prior to the current matter. Mere speculation is not enough to defeat a properly supported motion for summary judgment. *Wilson v. GEICO Cas. Co.*, 54,551 (La. App. 2 Cir. 6/29/22), 343 So. 3d 308. Further, the court must assume that all affiants are credible. *Id.* We find that plaintiffs have failed to produce factual support sufficient to establish the existence of a genuine issue of material fact or that defendants are not entitled to judgment as a matter of law. As such, the trial court erred in denying defendants' motion for summary judgment.

## CONCLUSION

The judgment of the trial court is reversed, and summary judgment is hereby entered in favor of Zurich American Insurance Company, Legends Gaming, LLC, and Louisiana Riverboat Gaming Partnership d/b/a Diamond Jacks Hotel and Casino d/b/a Diamond Jacks Casino, dismissing the claims of Theresa Lambert and Lee Lambert. Costs of this appeal are assessed to Theresa Lambert and Lee Lambert.

**REVERSED. DISMISSED.**

11